[Cite as *State v. Wycuff*, 2020-Ohio-5320.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 19CA28 |
| | : | |
| vs. | : | |
| | : | DECISION AND |
| SHAWN A. WYCUFF, | : | JUDGMENT ENTRY |
| | : | |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Evan Wagner, Evan N. Wagner at Law, LLC, Columbus, Ohio, for Appellant.

Judy C. Wolford, Pickaway County Prosecutor, and Heather MJ Carter, Assistant Pickaway County Prosecutor, Circleville, Ohio, for Appellee.

_____

Smith, P.J.

{¶1} This is an appeal from a Circleville Municipal Court judgment of conviction and entry of sentence. Appellant, Shawn Wycuff, was found guilty by a jury of one count of sexual imposition, a third-degree misdemeanor in violation of R.C. 2907.06(A)(1). He was sentenced to sixty days in jail, with thirty days suspended and the other thirty days were stayed pending appeal. He was also classified as a Tier I sex offender. On appeal, Wycuff contends 1) that his conviction is void ab initio because the prosecuting attorney in the matter lacked statutory authority to try him for the crime charged; and 2) that the trial court

committed plain error by deferring judgment on his Crim.R. 29 motion made at the close of the State's case-in-chief. Because Wycuff has failed to demonstrate the outcome of the proceedings would have been different if he had been prosecuted by the city law director instead of the assistant county prosecutor, he has not established plain error occurred below. Thus, his first assignment of error is without merit and it is overruled.

{¶2} With respect to Wycuff's second assignment of error, because Wycuff's Crim.R. 29 motion was made at the close of all evidence rather than the close of the State's case-in-chief, the trial court was permitted to defer ruling on it in accordance with Crim.R. 29(B). Additionally, because we have concluded that Wycuff's conviction for sexual imposition was supported by sufficient evidence, we find no merit to his second assignment of error. Accordingly, having found no merit in the assignments of error raised by Wycuff on appeal, they are both overruled and the judgment of the trial court is affirmed.

## FACTS

{¶3} Shawn Wycuff, Appellant herein, was charged with one count of sexual imposition, a third-degree misdemeanor in violation of R.C. 2907.06(A)(1), on February 8, 2019. The complaint was filed in the Circleville Municipal Court. The complaint alleged that Wycuff touched a minor female identified as A.M. on her upper thigh, close to her vagina, and then "touched her belly." A probable

cause affidavit attached to the complaint averred that A.M. had spent the night at

Wycuff's residence because she was having visitation with her mother, who lived

with Wycuff.[1]  The affidavit further averred that A.M.'s mother told her to sleep in

Wycuff's bed and that Wycuff would sleep on the couch.  The affidavit described

an incident that occurred that involved A.M. waking up to find Wycuff "in bed

with her with his hand around her touching her thigh close to her vagina and

rubbing her belly."  The affidavit stated that in response, A.M. "freaked out and

got out of bed and slept on the couch."  It appears that after this incident Wycuff

began communicating with A.M. on Facebook via private message.  A.M.'s aunt,

who was her primary custodian, discovered messages between Wycuff and A.M.

that were inappropriate, which led her to make a police report.  In particular, in one

of the messages Wycuff told A.M. that he doesn't let anyone come in his room,

"let alone [his] bed[,]" and that A.M. should feel special.  A.M.'s aunt also took

her to Nationwide Children's Hospital, where an interview and physical

examination took place.

{¶4} It appears from the record that the Circleville Director of Law, Gary

Kenworthy, was initially handling the prosecution of the matter.  His name appears

on several praecipes for subpoenas that were issued to various trial witnesses.

---

[1] Although the probable cause affidavit is part of the record for appellate purposes, the affidavit was not introduced as an exhibit at trial and was not before the jury for consideration.

However, when the jury trial began, Assistant Pickaway County Prosecutors Heather MJ Carter and Justin Benedict were present on behalf of the State rather than Mr. Kenworthy. There is no explanation in the record regarding why the county prosecutor's office became involved in the case or why Heather Carter proceeded to try the case rather than the law director for the city. In its appellate brief, the State represents that the law director's office requested Ms. Carter's presence at the final pretrial hearing "due to her participation in the investigation." Thereafter, the law director asked if the county prosecutor's office would be willing to handle the case due to their direct involvement in the investigation. The State further represents that all parties, including defense counsel, agreed to the arrangement that the county prosecutor's office would handle the case from that point forward.

{¶5} The case was tried before a jury and no objection was made to the assistant county prosecutor's participation in the trial. The State presented several trial witnesses, including the victim, the victim's aunt, the victim's mother's boyfriend's sister (who the victim had resided with for a short time), and Detective Daniel Maher from the Circleville Police Department, who is also a special deputy with the U.S. Marshal Service and task force officer for the Franklin County Internet Crimes Against Children Task Force. The State also introduced several exhibits demonstrating Wycuff had been communicating with the victim in the

form of private Facebook messages after the incident. After the State rested its case and admitted its exhibits, the defense rested as well without presenting any witnesses. Thereafter, defense counsel stated she would "like to make a Rule 29 motion" after the jury was dismissed. The trial court heard the motion but stated that it would reserve decision on the motion pursuant to Crim.R. 29(B). Finally, closing arguments were made, jury instructions were given, and the matter was submitted to the jury for deliberation.

{¶10} The jury found Appellant guilty as charged. Defense counsel did not renew the motion for acquittal and the trial court did not expressly rule on the motion before imposing sentence and concluding the proceedings. Wycuff subsequently filed his timely appeal, setting forth two assignments of error for our review.

## ASSIGNMENTS OF ERROR

I. "THE APPELLANT'S CONVICTION IS VOID *AB INITIO* BECAUSE THE PROSECUTING ATTORNEY IN THE MATTER *SUB JUDICE* LACKED STATUTORY AUTHORITY TO TRY THE APPELLANT FOR THE CRIME CHARGED."

II. "THE TRIAL COURT COMMITTED PLAIN ERROR BY DEFERRING JUDGMENT ON THE APPELLANT'S CRIM.R. 29 MOTION AT THE CLOSE OF THE STATE'S CASE-IN-CHIEF."

## ASSIGNMENT OF ERROR I

{¶11} In his first assignment of error, Wycuff contends that his conviction is void ab initio because the prosecuting attorney lacked statutory authority to try him

for the crime charged.  More specifically, Wycuff argues that pursuant to R.C. 1901.34(A), the Circleville City Director of Law was solely authorized to try this matter, and as a result he claims his conviction should be vacated.  The State responds by arguing that even if the county prosecutor's handling of the matter was erroneous, any error was harmless.  Because the argument raised under this assignment of error presents a question of law, we review this matter de novo.  *City of Logan v. Quillen*, 4th Dist. Hocking No. 94CA26, 1995 WL 637059, *8 (Oct. 27, 1995).

{¶12} Wycuff argues that the specific issue to be decided in this case is "whether a county prosecuting attorney may prosecute a misdemeanor charge in municipal court."  Wycuff argues that "a county prosecutor trying a misdemeanor case in municipal court – is more akin to a lack of jurisdiction over the particular case at bar because the county prosecutor was want of statutory authority to try the action in the first instance."  Both parties set forth R.C. 1901.34 as relevant to the determination of this issue, but they acknowledge there is very little case law on this particular question.  Although there are some Attorney General opinions on this topic, " 'Attorney General opinions are not binding on courts; at best, they are persuasive authority.' "  *State v. Hicks*, 4th Dist. Adams No. 11CA933, 2012-Ohio-3831, ¶ 28, quoting *State ex rel. Van Dyke v. Pub. Emps. Retirement Bd.*, 99 Ohio St.3d 430, 2003-Ohio-4123, 793 N.E.2d 438, ¶ 40.

{¶13} With regard to Wycuff's jurisdictional analogy, we note that he was charged and convicted of sexual imposition, a third-degree misdemeanor in violation of R.C. 2907.06(A)(1), which occurred in the city of Circleville. Subject matter jurisdiction refers to a court's power to hear and decide a particular case on its merits. *BCL Enterprises, Inc. v. Ohio Dept. of Liquor Control*, 77 Ohio St.3d 467, 469, 1997-Ohio-254, 675 N.E.2d 1; *Morrison v. Steiner*, 32 Ohio St.2d 86, 290 N.E.2d 841, paragraph one of the syllabus (1972). A judgment rendered by a court lacking subject matter jurisdiction is void ab initio. *Patton v. Diemer*, 35 Ohio St.3d 68, 518 N.E.2d 941, paragraph three of the syllabus (1988). R.C. 1901.20(A)(1) provides that the municipal court has jurisdiction over "misdemeanor cases committed within its territory." Therefore, the Circleville Municipal Court had subject matter jurisdiction over Wycuff's case. Furthermore, the criminal complaint filed against Wycuff was handled by the city law director until the final pre-trial. Thus, the jurisdiction of the municipal court was properly invoked and this matter was prosecuted in a normal fashion from the beginning of the case until just prior to the jury trial, at which time the county prosecutor's office began to assist. As such, we reject Wycuff's argument to the extent he argues his conviction should be vacated based upon a failure of jurisdiction.

{¶14} R.C. 1901.34 governs criminal prosecutions, compensation of prosecuting officers and agreements with prosecuting attorneys. It provides in section (A) as follows:

> Except as provided in divisions (B) and (D) of this section, the village solicitor, city director of law, or similar chief legal officer for each municipal corporation within the territory of a municipal court shall prosecute all cases brought before the municipal court for criminal offenses occurring within the municipal corporation for which that person is the solicitor, director of law, or similar chief legal officer. Except as provided in division (B) of this section, the village solicitor, city director of law, or similar chief legal officer of the municipal corporation in which a municipal court is located shall prosecute all criminal cases brought before the court arising in the unincorporated areas within the territory of the municipal court.

R.C. 1901.34(B) provides, in pertinent part, that in certain counties, "county prosecuting attorneys shall prosecute in municipal court all violations of state law arising in their respective counties." The only counties within the Fourth District Court of Appeals listed in section (B) are Hocking and Jackson counties. Thus, this section does not apply to Pickaway county. Section (B) also addresses compensation for county attorneys given the duty of prosecuting violations of state

law in municipal courts, which is not at issue herein. R.C. 1901.34(D) states that prosecuting attorneys in counties other than those listed in section (B) may do as follows:

> enter into an agreement with any municipal corporation in the county in which the prosecuting attorney serves pursuant to which the prosecuting attorney prosecutes all criminal cases brought before the municipal court that has territorial jurisdiction over that municipal corporation for criminal offenses occurring within the municipal corporation.

Section (D) does not elaborate on what type of agreement would be required in order for a county prosecuting attorney to prosecute criminal offenses brought in the municipal court. Thus, based upon a review of R.C. 1901.34 it appears that the Pickaway County Prosecutor was not statutorily authorized to prosecute the criminal offense of sexual imposition in the Circleville Municipal Court in the absence of an agreement to do so, as referenced in R.C. 1901.34(D). *See* 1994 Ohio Op. Atty. Gen. No. 94-051, syllabus ("A county prosecuting attorney may not prosecute misdemeanor cases brought before a municipal court, unless the prosecuting attorney is required to bring such prosecutions pursuant to R.C. 1901.34(B), or the county prosecuting attorney and a municipal corporation have entered into an agreement pursuant to R.C. 1901.34(D) whereby the county

prosecuting attorney agrees to prosecute in municipal court criminal cases within the municipal court's jurisdiction that arise out of criminal offenses occurring within the boundaries of that municipal corporation.").

{¶15} However, this Court previously considered R.C. 1901.34 in *City of Logan v. Quillen, supra*. Quillen was convicted in the "Hocking County Municipal Court" of operating a motor vehicle outside the scope of his court-granted driving privileges. *Id.* at *1. Quillen was initially charged with a violation of the city code, which was later amended to a state law violation. *Id.* at *4. Quillen argued on appeal that R.C. 1901.34 mandated that the Hocking County Prosecutor prosecute all violations of state law and that it was error for the Logan City Law Director to continue with the prosecution of his case after the charge was amended. *Id.* at *8. This Court upheld Quillen's conviction, based in part upon our determination that "[t]he nature of R.C. 1901.34 suggests that it is not meant to be jurisdictional, but rather administrative and directory." *Id.* at *9, citing *State v. Eddy*, 4th Dist. Washington No. 89CA15 (Mar. 6, 1991). In reaching our decision, we noted that the State's argument that "the city and county [had] exchanged mutual aid to each other on similar matters in the past, and that neither the city nor county [had] complained about the manner in which this case was prosecuted." *Id.* at *8. We further reasoned that "[t]he issue of which particular attorney prosecutes

appellant's case has no direct impact on appellant." *Id.* at *9. As such, we found that any violation of R.C. 1901.34(B) constituted harmless error. *Id.*

{¶16} Although *Quillen* is factually distinguishable from the case sub judice and the legal question presented is not exactly identical, we find the reasoning contained therein is still persuasive. First, the State here represents that all parties agreed to the county prosecutor's involvement in the case during the final pre-trial hearing and jury trial. Although there is nothing actually in the record to confirm this, there is likewise an absence of any objection by the defense. Thus, it can be inferred that the defense made no objection to the county prosecutor's participation. Accordingly, we conclude Wycuff waived any error under R.C. 1901.34. *See State v. Hooker*, 11th Dist. Lake No. 12-103, 1987 WL 18009, *1 (Sept. 30, 1987) (affirming criminal conviction in municipal court in case prosecuted by county prosecutor despite lack of evidence that a valid agreement existed pursuant to R.C. 1901.34(D) where the appellant failed to object at trial).

{¶17} Second, we are mindful that " '[i]t is a well-established rule that " 'an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time such error could have been avoided or corrected by the trial court.' " ' " *State v. Owens*, 2016-Ohio-176, 57 N.E.3d 345, ¶ 50, quoting *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15, quoting

*State v. Awan*, 22 Ohio St.3d 120, 122, 489 N.E.2d 277 (1986), quoting *State v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus. Because Wycuff failed to object below, we must limit our consideration of the arguments raised under this assignment to a plain error review. To constitute plain error under Crim.R. 52(B), the defendant must demonstrate (1) an error, i.e., a deviation from a legal rule, (2) that the error constitutes an obvious defect in the trial proceedings, and (3) that the error must have affected substantial rights, i.e., the error must have affected the outcome of the trial. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Moreover, "even if an accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it." *Rogers* at ¶ 23. Instead, courts take notice of plain error with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *Rogers* at ¶ 23, citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. *See also State v. Lewis*, 4th Dist. Ross No. 14CA3467, 2015-Ohio-4303, 2015 WL 6111474, ¶ 9. With these standards in mind, we consider Wycuff's claim.

{¶18} Here, Appellant was convicted of one count of sexual imposition in violation of R.C 2907.06(A)(1), which provides as follows:

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(1) The offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard.

R.C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation, the thigh, genitals, buttock, pubic region or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

{¶19} The victim testified that she fell asleep alone in Wycuff's bed and awoke to him lying in bed behind her with his hand on her inner thigh, close to her vagina. She testified that when she awoke and realized what was happening, she got up and went to the couch in the other room. After the incident occurred, Wycuff began sending Facebook messages to the victim, one of which stated as follows: "U no how bad I wanted to kiss u that night but didn't wanna fill rejected lime usual." [sic]. Additional messages sent by Wycuff asked the victim to spend the night with him and to lie to her aunt about where she would be staying. We believe the evidence introduced by the State through the victim's testimony and the Facebook messages satisfied the elements of the offense charged. As such, we

cannot conclude that the county prosecutor's prosecution of the matter, rather than the city law director, even if it was a technical violation of R.C. 1901.34, changed the outcome of the proceedings. The sentiment voiced in *Quillen* also applies herein: "[t]he issue of which particular attorney prosecutes appellant's case has no direct impact on appellant." *Quillen, supra*, at *9.

{¶20} Based on the foregoing, we cannot conclude Wycuff has demonstrated plain error occurred as a result of his prosecution being handled by the county prosecutor rather than the city law director. Accordingly, we find no merit to the arguments raised under his first assignment of error and it is overruled.

## ASSIGNMENT OF ERROR II

{¶21} In his second assignment of error, Wycuff contends that the trial court committed plain error by deferring judgment on his Crim.R. 29 motion, which he contends was made at the close of the State's case-in-chief. The State argues that Wycuff's argument "fails on its face" because the motion was made at the close of all evidence, not at the close of the State's case-in-chief, and that Crim.R. 29(B) permits the trial court to defer ruling on such motion until the end of trial. For the following reasons, we agree with the State.

{¶22} Crim.R. 29 provides, in pertinent part, as follows:

(A) Motion for Judgment of Acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is

closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

(B) Reservation of Decision on Motion. If a motion for a judgment of acquittal is made at the close of all the evidence, the court may reserve decision on the motion, submit the case to the jury and decide the motion either before the jury returns a verdict, or after it returns a verdict of guilty, or after it is discharged without having returned a verdict.

Thus, while a motion for acquittal that is made at the close of the State's case-in-chief must be ruled on immediately, according to the plain language of the statute a trial court may reserve decision on a motion for acquittal made at the close of all of the evidence. Crim.R. 29(A) and (B); *State v. Canalos*, 4th Dist. Athens No. 1442, 1991 WL 122838.

{¶23} Although Wycuff argues on appeal that his motion for acquittal was made at the close of the State's case-in-chief, the trial transcript reveals otherwise. For instance, the following exchange occurred on the record after the State presented its last witness:

MS. CARTER:       Your Honor, the State would move to enter exhibits and thereafter rest.

THE COURT:       I currently have those as seven, would that be correct?

MS. CARTER:       Yes, Your Honor.

THE COURT:       Very good.  Ms. Janes, any – any objection on the introduction of those seven?

* * *

MS. JANES:       Okay.  That's fine. [after it was agreed Exhibit 7 would not be entered into evidence.]

* * *

THE COURT:       Ms. – Ms. Janes, at this point would you like to call any witnesses?

MS. JANES:       No, Your Honor.

THE COURT:       Okay.  Very good.  That having been done, do we want to proceed to argument or would you like to take a break over lunch?

MS. CARTER:       Can we just have a quick recess, Your Honor?

MS. JANES:       And –

THE COURT:        Okay.  We're gonna take a break at this point for lunch from 11:30 to, say, 12:30.

MS. CARTER:      Oh, I didn't realize –

THE COURT:        Come back at 12:30.  Will that work?

MS. CARTER:      Yes, that's fine.

MS. JANES:         Your Honor, I would also like to make a Rule 29 motion once the jury's  --

THE COURT:        Okay.  We'll do that outside – yeah.

* * *

THE COURT:        Back on the record here.  The jury is no longer with us.  At the close of the State's case.  Defendant indicated a desire to make a motion to Rule 29.  Ms. Janes.

Thereafter, counsel for both sides made their arguments regarding the motion.  In response, the trial court stated as follow:

THE COURT:        Well, the Court – I will say that I understand the argument on Rule 29.  It's – its's a close call.  I tell you what I'm going to do is under 29B, I'm going to reserve a ruling on that motion pending the decision of the jury.  I'll reserve that under B and take a look at it at that point.  So for that purposes [sic] right at this moment, I'm going to reserve ruling on that.  I have the ability to do that based on the current

status of the case.  So we'll do that at that point.  Thank you very much.

We'll see you back here at 12:30.

{¶24} Despite the fact that the trial court stated on the record that Wycuff indicated a desire to make a motion for acquittal at the close of the State's case, the trial transcript indicates otherwise.  The transcript clearly reveals that the motion was not made until after defense counsel informed the court she did not wish to present any witnesses.  Thus, the motion was made at the close of all evidence and the trial court was permitted to reserve ruling on the motion, as expressly stated by the court.  Further, once the jury returned a verdict of guilty, defense counsel did not renew the motion and trial court did not expressly rule on the motion.  However, pending motions that are not ruled upon by the trial court are deemed denied.  *State v. Smith*, 1st Dist. Hamilton Nos. C-180439, C-180604, 2019-Ohio-5350, ¶ 13, citing *State v. Guenther*, 9th Dist. Lorain No. 06CA008914, 2007-Ohio-681, ¶ 12 ("We presume by the trial court's silence that Appellant's motion * * * was denied.").  *See also Montgomery v. Montgomery*, 4th Dist. Scioto Nos. 03CA2923, 03CA2925, 2004-Ohio-6926, ¶ 18 (" * * * we note that it is well-settled law that a motion not expressly ruled on is deemed impliedly overruled.") (Citations omitted).  Thus, we find no error in the trial court's decision to reserve judgment on the motion for acquittal pursuant to Crim.R. 29(B), or its subsequent implied overruling of the motion after the jury rendered its verdict.

{¶25} However, our analysis does not end here. Wycuff also raises a challenge to the sufficiency of the evidence within this assignment of error, rather than raising the argument as a separate assignment of error. In *Milton Banking Co. v. Dulaney*, 4th Dist. Jackson No. 11CA1, 2012-Ohio-1494, fn. 1, this Court noted that an appellant's brief must contain arguments "with respect to each assignment of error," in accordance with App.R. 16(A)(7). *See also State v. Bloomfield*, 4th Dist. Ross No. 03CA2720, 2004-Ohio-749, fn. 2, citing *State v. McCoy*, 4th Dist. Hocking No. 02CA12, 2002-Ohio-6305, fn. 3, *State v. Nave*, 4th Dist. Meigs No. 01CA3, 2002-Ohio-1594, fn. 3, *Marietta v. Barth*, 4th Dist. Washington No. 99CA22, 2000 WL 2546, fn. 2 (Dec. 22, 1999), and *State v. Wyatt*, 4th Dist. Scioto No. 93CA2168, 1994 WL 484083, *2 (Aug. 30, 1994). We explained that "[a]lthough appellate courts have the option to address two or more assignments of error at once, the parties do not." *Milton Banking Co.* at fn. 1, citing *Powell v. Vanlandingham*, 4th Dist. Washington No. 10CA24, 2011-Ohio-3208, ¶ 24 and *Keffer v. Cent. Mut. Ins. Co.*, 4th Dist. Vinton No. 06CA652, 2007-Ohio-3984, fn.2. We further noted that "App.R. 12(A)(2) permits us to disregard those assignments of error that are not separately argued." *Milton Banking Co.* at fn.1. However, in both *Milton Banking Co.* and *State v. Bloomfield*, we ultimately decided to consider the assignments of error that were not separately assigned in the interests of justice. Here, although Wycuff failed to separately assign and

argue that his conviction was not supported by sufficient evidence, and although we are therefore permitted to disregard the argument in accordance with App.R. 12(A)(2), in the interests of justice, we will address the argument.

{¶26} We have already determined, under a plain error analysis, that Wycuff's conviction for sexual imposition was supported by sufficient evidence. However, as explained above, plain error review employs a somewhat limited analysis. A claim of insufficient evidence, however, generally invokes a due process concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Thus, when reviewing the sufficiency of the evidence, an appellate court's inquiry primarily focuses upon the adequacy of the evidence, or whether the evidence, if believed, could reasonably support a finding of guilt beyond a reasonable doubt. *Thompkins, syllabus.* The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *E.g., Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991), superseded by constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997). Furthermore, a

reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins* at 390.

{¶27} As such, when reviewing a sufficiency of the evidence claim, an appellate court must construe the evidence in a light most favorable to the prosecution. *See State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant*, 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). A reviewing court will not overturn a conviction on a sufficiency of the evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did. *State v. Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001). Here, after our review of the record, we believe the State presented sufficient evidence to prove the essential elements of the offense of sexual imposition beyond a reasonable doubt.

{¶28} As set forth above, sexual imposition is governed by R.C. 2907.06(A)(1), which provides as follows:

> (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(1) The offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard.

Furthermore, R.C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation, the thigh, genitals, buttock, pubic region or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." Here, the victim testified that she awoke to Wycuff lying in bed behind her with his hand on her inner thigh, near her vagina. The victim testified that upon waking in that situation, she got up out of the bed and went to the couch. When asked why she didn't immediately report the incident to her aunt or to the staff at Nationwide Children's Hospital, the victim testified she was embarrassed about what happened.[2] We believe the victim's testimony at trial demonstrated that she found the contact to be offensive. Moreover, we conclude the Facebook messages sent by Wycuff to A.M. sufficiently establish that Wycuff's actions were for the purpose of his own sexual arousal or gratification. For instance, in the messages sent by Wycuff he indicated he really wanted to kiss A.M. on the night in question and he thereafter asked A.M. to lie to her aunt and come spend the night with him.

---

[2] Although the medical records from Nationwide Children's Hospital were utilized and referenced during the trial, they were not admitted as exhibits. Thus, they are not part of the appellate record.

{¶29} Additionally, although not specifically argued by Wycuff, we are mindful of R.C. 2907.06(B), which provides that "[n]o person shall be convicted of a violation of this section solely upon the victim's testimony unsupported by other evidence." Thus, the sexual imposition statute has a corroboration requirement. However, we have explained as follows with respect to the corroboration requirement:

> the corroborating evidence "need not be independently sufficient to convict the accused." *State v. Economo* (1996), 76 Ohio St.3d 56, 1996-Ohio-426, 666 N.E.2d 225, syllabus. Rather, even "[s]light circumstances or evidence which tends to support the victim's testimony is satisfactory." *Id.* at syllabus. Corroborating evidence is not an element of the offense, but an ancillary evidential requirement that the trial court must decide. *Id.* at 60-62.

*State v. Franklin*, 4th Dist. Highland Nos. 05CA20, 05CA21, 2006-Ohio-6369, ¶ 23. In *Franklin*, we determined that the fact that a police report was made by the victim and her mother on the date in question, coupled with defense counsel's stipulation that the victim was at the location in question on the date in question, sufficiently met the corroboration requirement. *Franklin* at ¶ 30. *See also State v. Laferty*, 4th Dist. Vinton No. 97CA517, 1999 WL 249720 (Apr. 21, 1999) (finding sufficient corroboration where other

evidence showed that the victim's car was in the defendant's driveway at the time of the offense.)

{¶30} Here, there seems to be no real dispute that the victim was staying at Wycuff's residence with her mother and her mother's boyfriend for the weekend when this incident occurred. The victim's aunt, who has temporary custody of the victim, further verified this fact when she testified at trial. Additionally, subsequent Facebook messages sent by Wycuff to A.M reference that she had been in his room and in his bed, which is where the incident reportedly occurred. Finally, A.M.'s aunt testified that when A.M. returned home after being at Wycuff's for the weekend, her behavior was unusual in that she came in and went directly upstairs. We find that this evidence constitutes sufficient corroboration that Wycuff committed the crime of sexual imposition.

{¶31} Thus, after viewing the evidence in a light most favorable to the State, we find that any rational trier of fact could have found the essential elements of the crime of sexual imposition proven beyond a reasonable doubt. Therefore, we cannot conclude that the trial court erred in implicitly overruling Wycuff's Crim.R. 29 motion for acquittal. Because we find no merit to Wycuff's second assignment of error, it is hereby overruled.

{¶32} Accordingly, having found no merit in either of the assignments of

error raised on appeal, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Circleville Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Myers, V.J., concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**